SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

125 Broad Street
New York, New York 10004-2498

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

November 12, 2026

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for the Second Circuit
40 Foley Square
New York, New York 10007

Re: *People of the State of New York* v. *President Donald J. Trump*, No. 26-2427

Dear Ms. Wolfe:

On behalf of Defendant-Appellant President Donald J. Trump, I respectfully submit this letter in response to the Court's November 6, 2026 order. The answer to the Court's question is straightforward: developments in the state appeal have no impact on this appeal. Under the federal-officer removal statute, removal remains legally available so long as the case is "pending" in state appellate court, 28 U.S.C. §§ 1442(a), 1455(a), (b)(1), regardless of whether that court has heard argument or rendered a decision (which almost certainly will not happen in this case for, at the earliest, several months, if not substantially longer).

The fact that the First Department has heard oral argument also does not affect President Trump's "good cause" to remove. President Trump has repeatedly pressed for expedition in this removal litigation. Over one year ago, this Court vacated the district court's order denying removal, and remanded for a do-over. This Court recognized that President Trump had "viable arguments," and "at least some prospect of successfully removing." *New York* v. *Trump*, 158 F.4th 458, 464-465 (2d Cir. 2025). Yet, it took the

district court another ten months to again erroneously deny removal in late August of this year. President Trump then immediately urged this Court to enter a schedule that would have allowed it to hear oral argument in early October, well before the state-court argument on November 5. Not only did DANY repeatedly object to the President's expedition request—it expressly assured this Court that the progress of the state appeal would *not* prejudice President Trump. Dkt. 12.1 at 3. DANY should not now be allowed to profit from delay it actively urged.

## I. The Progress Of The President's State Appeal Does Not Affect The Availability Of Removal.

The fact that oral argument has now taken place in the First Department has no impact on the important statutory interpretation questions before this Court. Congress broadly authorized removal of a "pending" "criminal prosecution," including "at a later time" than "before trial" "for good cause shown." 28 U.S.C. §§ 1442(a), 1455(a), (b)(1). Congress also expressly defined "criminal prosecution" to include "any proceeding" in which "a judicial order . . . is sought or issued." *Id.* § 1442(d)(1). President Trump's "criminal prosecution" remains "pending" on direct appeal, and will remain so even after the First Department issues its decision, because of the availability of review in the New York Court of Appeals. Def. Br. 26-32; Dkt. 16.1 at 3.

As DANY itself has already told this Court, a First Department decision is not imminent: that court "will likely take months," if not longer, to issue its decision. Dkt. 12.1 at 1. The First Department took nearly a year after argument to rule in *People by*

*James* v. *Trump*, 249 A.D.3d 21 (1st Dep't 2025), a similarly significant case brought against the President, also involving multiple important issues of state and federal law.

To the extent this Court is concerned about preventing a waste of the state court's resources—a result that President Trump tried to prevent in pressing for expedition, over DANY's opposition, *see* Dkt. 7.1 at 7—this Court has a ready option to address that concern. After this Court hears argument, it can quickly issue a summary order, with opinion to follow, directing the district court to grant removal. Reply Br. 33. Such opinion-to-come orders are "common practice" in this Circuit when, as here, special circumstances require them. *E.g.*, *Hassoun* v. *Searls*, 976 F.3d 121, 129 & n.4 (2d Cir. 2020); Reply Br. 33. That order will cause the First Department to put pencils down, as it will result in the First Department losing jurisdiction over the pending appeal.

## II. Developments In The State Appeal That Are Beyond President Trump's Control, And That He Has Tried To Prevent, Cannot Affect This Court's "Good Cause" Analysis.

It would be unfair for this Court to now consider the fact that the First Department has heard oral argument as a reason to deny removal. As this Court recognized, Congress adopted the "good cause" standard here to protect movants who act "diligently" from "circumstances outside of their control." *New York* v. *Trump*, 158 F.4th at 466. The President has acted diligently, and the fact that this Court is only hearing argument now is completely outside his control; indeed, he did everything possible to avoid this result.

President Trump sought to remove on ***August 29, 2024***, less than two months after *Trump* v. *United States*, 603 U.S. 593 (2024). After the district court denied leave,

President Trump immediately appealed, and this Court heard argument on ***June 11, 2025***. That was nearly five months before President Trump filed his opening brief in the First Department. But this Court did not rule until ***November 6, 2025***. In recognizing that the President had "viable arguments," this Court did not resolve any of the major legal questions here, and instead vacated and remanded. *New York* v. *Trump*, 158 F.4th at 465, 469. President Trump moved for, and obtained, expedited issuance of the mandate. Dkt. 109, No. 24-2299 (2d Cir. Nov. 21, 2025). He then asked the district court for expedited briefing and decision. D. Ct. Dkt. 67. But the district court took another ten months to rule, despite President Trump's three letters requesting a prompt ruling, D. Ct. Dkts. 80, 84, 88. Meanwhile, DANY wrongly chastised President Trump for "complain[ing] about 'justice delayed,'" and urged the district court to take its time. D. Ct. Dkt. 89 at 1-2.

When the district court finally ruled and, in error, denied removal again on ***August 28, 2026***, President Trump noticed his appeal the same day. Five days later, he moved to expedite, proposing a schedule that would have completed briefing by October 7 (Dkt. 7.1 at 1, 7-8), so that this Court could rule before the First Department heard argument. DANY opposed, maintaining that President Trump "would not suffer cognizable prejudice even if the First Department were to issue a ruling" first. Dkt. 12.1 at 3. This Court granted expedition, but gave DANY the 30-day response period that it had requested as a fallback. Dkt. 23. Even then, President Trump urged this Court to schedule argument for the week of November 2, before the First Department's argument. Dkt. 36. This Court chose not to do so. The protection Congress afforded to federal officers (very much including the sitting

President) who diligently insist on a federal forum cannot be defeated by strategic delays that DANY encouraged, and that the President repeatedly tried to prevent.

The purpose of federal-officer removal is to enable federal courts to "interfere at once" to provide federal officers the "protection of a federal forum." *Willingham* v. *Morgan*, 395 U.S. 402, 406-407 (1969). Congress recognized that States may be "hostile" to federal policies and officers. *Id.* at 405. Here, DANY defeated President Trump's first removal effort by wrongly insisting that its prosecution had nothing to do with his official acts, and that it might not target election-law violations. Def. Br. 1-2, 5-6. DANY then relied on those very acts at trial, and on a state election-law theory that FECA expressly preempts. Def. Br. 4-5, 10-15, 42-50. The state judge presiding over the trial made prohibited political contributions to President Biden's 2020 campaign and a "Stop Republicans" PAC, among other disqualifying conflicts. J.A. 985-989. And, following the verdict, a former President and major Presidential candidate faced the risk of incarceration right before the general election. All that is the definition of a hostile forum.

Absent removal, President Trump would likely have to wait years for the First Department and New York Court of Appeals to issue their decisions before he can seek discretionary review in the U.S. Supreme Court. That would defeat the very purpose of federal-officer removal, under which the federal officer is entitled to an immediate federal forum *as of right*. President Trump respectfully requests that this Court recognize his right to a federal forum to clear his name once and for all from a baseless criminal conviction that rests on multiple fatal errors of both federal and state law.

Respectfully submitted,

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

cc: Counsel of Record (*via* ACMS)